UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

Autumn D. S.[1],

    Plaintiff,

        v.

FRANK BISIGNANO, COMMISSIONER
OF SOCIAL SECURITY[2],

    Defendant.

CASE NO. 2:25-CV-43-SJF

**OPINION and ORDER**

Plaintiff Autumn D. S. ("Ms. S") seeks judicial review of the Social Security

Commissioner's decision denying Ms. S's application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("Act"). This Court may enter a ruling

based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g).

[DE 8]. For the reasons discussed below, the Court **REMANDS** the decision of the

Commissioner of the Social Security Administration ("SSA").

I.     **OVERVIEW OF THE CASE**

Ms. S protectively filed her application for DIB on January 11, 2021, alleging

disability beginning January 1, 2021. (Administrative Record[3] 15; hereinafter "AR"). She

was denied initially, on reconsideration, and after a hearing before an administrative

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.
[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.
[3] Administrative record page numbers are noted in the bottom right corner of each page.

law judge ("ALJ"). (*Id.*). The ALJ issued an unfavorable decision on March 29, 2022. (AR 27). Ms. S then requested further review of the ALJ's decision, and the Appeals Council denied this request on September 30, 2022. (AR 1). Thus, the ALJ's decision became the final decision of the Commissioner. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. S filed suit this in Court on November 29, 2022, under cause number *Salat v. Commissioner of Social Security*, Case No. 2:22-cv-364-JD-JPK. On August 22, 2023, Ms. S and the Commissioner jointly moved to remand her case her case for further administrative proceedings, which the Court granted on September 5, 2023. [DE 21, DE 22 in 2:22-cv-364-JD-JPK]. On remand, Ms. S had another hearing before an ALJ on September 10, 2024. Her application was denied in a subsequent decision entered on September 27, 2024. (AR 539). The ALJ's decision was considered the final decision for judicial review, prompting Ms. S to file the above-captioned case in this Court on January 27, 2025. Thus, this Court has jurisdiction under 42 U.S.C. § 405(g).

## II.     APPLICABLE STANDARDS

### A.     Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based on his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 404.1520. The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

### B.      Standard of Review

The Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir.

2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

III.    DISCUSSION

A.    Summary of the ALJ's Decision Denying Benefits

Ms. S's online video hearing before the ALJ took place on September 10, 2024. (AR 528).  Ms. S appeared along with an attorney. On September 27, 2024, the ALJ issued a written decision denying Ms. S's application for DIB, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520. (AR 531, AR 539).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. S had not engaged in substantial gainful activity since January 1, 2021, her alleged onset date. (20 C.F.R. § 404.1571 et seq., and § 416.971 et seq.). (AR 531).

At Step Two, an ALJ's inquiry focuses on whether the claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ concluded that Ms. S suffered from the following severe impairments: panic disorder, depression, social anxiety disorder, anxiety, and bipolar disorder (AR 531). The ALJ thus concluded that these medically determinable impairments significantly limit Ms. S's ability to perform basic work activities as required by SSR 85-28.

The ALJ concluded at Step Three that Ms. S does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925 and 416.926). In doing so, the ALJ considered

Listings 12.04 and 12.06 (AR 531). Accordingly, before moving on to Step Four, the ALJ

proceeded to determine whether Ms. S can perform her past relevant work based on her

residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable

impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is

the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To

determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their

intensity, persistence, and limiting effects, and the consistency of these symptoms with

the objective medical evidence and other evidence in the record. 20 C.F.R. §

404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light,

medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ concluded that Ms. S

retained the RFC to perform the full range of all work levels but with the following non-

exertional limitations:

> [Ms. S] can understand, remember and carryout simple tasks and
> instructions. She can maintain adequate attention and concentration for
> simple tasks and instructions and make judgments to commensurate with
> those simple tasks and instructions. However, she cannot perform
> independent decision making or use of judgment. She can interact
> appropriately, with supervisors and can maintain occasional interaction
> with coworkers, but cannot have any interaction with the general public.
> Last, she cannot tolerate fast paced, production or quota work, meaning
> no tandem work assignments, machine regulated work or hourly
> production requirements, but can tolerate occasional changes in the work
> setting.

(AR 532). Based on this RFC, at Step Four, the ALJ found that Ms. S was unable to

perform her past relevant work as a seamstress. (AR 538). Accordingly, the ALJ moved

on to last step in the five-step sequential analysis to determine whether Ms. S could perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). The ALJ found that, while Ms. S could not perform any past relevant work, she retained the RFC to perform the representative jobs of laundry worker (30,000 jobs nationally), general helper (10,000 jobs nationally), and dryer attendant (10,000 jobs nationally). (AR 539).

Finding that Ms. S could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Ms. S has not been under a disability from January 11, 2021, through the date of the ALJ's decision. (*Id.*).

### B. Issues for Review

Ms. S makes two arguments in support of remand. First, Ms. S contends that the ALJ's evaluation of the medical opinions in the record was not supported by substantial evidence. Ms. S contends that the ALJ cherry-picked evidence, made independent medical findings, and considered immaterial evidence when evaluating the medical opinion rendered by Dr. Caryn Brown, Psy.D. Ms. S also contends that the ALJ erred when determining that Ms. S's allegations of the intensity, persistence, and limiting

effects of her symptoms were inconsistent with the evidence. In both arguments, Ms. S disputes how the ALJ considered her activities of daily living in the decision.

For the reasons explained below, the Court can only find that the ALJ erred in considering Ms. S's daily activities throughout the decision. As such, remand is appropriate.

### C.    Consideration of Ms. S's Daily Activities

In the decision, the ALJ found that Ms. S medically determinable impairments could reasonably be expected to cause her alleged symptoms. But the ALJ noted that the intensity, persistence, and limiting effects of Ms. S's symptoms were not consistent with the evidence – noting several times throughout the decision that Ms. "enjoys playing games with her boys, crocheting, sewing, and making jewelry." (AR 533, 535, 536, 537). The ALJ addressed these hobbies when considering the medical opinions rendered by Dr. Caryn Brown, Psy.D. and Dr. Michael Lace, Psy.D. and when discussing the paragraph B criteria[4] in the RFC assessment. Ms. S's first challenge on review disputes the ALJ's medical opinion assessments, so the Court begins there.

### 1.    Medical Opinions

The ALJ first discussed the medical opinion rendered by Dr. Caryn Brown, Psy.D. Dr. Brown is a psychologist who performed a consultative examination for Ms. S on May 7, 2021. Dr. Brown's evaluation included background information, observations

---

[4] When a claimant has a medically determinable mental impairment, the ALJ rates the claimant's degree of functional limitation in four broad areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). These four broad functional areas of mental functioning are known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq.

as to Ms. S's behavior and appearance, an overview of Ms. S's reported activities and behavioral health, a mental status examination, and a medical source statement or summary. In her medical source statement, Dr. Brown opined that "[b]ased on Ms. S'[]s performance on tasks of the MSE [mental status examination] and report of daily of functioning, her ability to attend, concentrate and complete simple tasks appears to be limited. Ms. S[]'s ability to interact with others in public or in a work setting appears to be limited." (AR 340).

Next, the ALJ discussed the opinion from Dr. Michael Lace, Psy.D. Dr. Lace is a psychologist who reviewed Ms. S's medical records and responded to interrogatories propounded by SSA on January 26, 2022. (AR 516-524). In his interrogatory responses, Dr. Lace opined that, based on the record, Ms. S had mild limitations in understanding, remembering, or applying information; mild to moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. (AR 521).

The ALJ evaluated these opinions using the regulatory framework for claims filed after March 27, 2017, such as Ms. S's claim. Under the regulations, an ALJ "does not give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The regulations instead require an ALJ to explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Persuasiveness of a medical opinion is based on several factors: supportability;

consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; and specialization. 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion," while "consistency assesses how a medical opinion squares with other evidence in the record." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at \*4 (N.D. Ill. Mar. 31, 2022) (internal citation omitted). Accordingly, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(1). Likewise, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* Consistent with general legal standards for reviewing social security cases, an ALJ need only "minimally articulate [her] reasoning for how [s]he assessed a medical opinion, [but] [s]he must still consider the regulatory factors and build a 'logical bridge' from the evidence to [her] conclusion." *Taylor v. Kijakazi*, No. 2:22-cv-32-PPS-JPK, 2023 WL 334601, at \*3 (N.D. Ind. Jan. 20, 2023) (internal citation omitted).

When evaluating Dr. Brown's opinion, the ALJ acknowledged that Dr. Brown found Ms. S's ability to learn, remember, and understand simple instructions was

limited and that Ms. S's ability to attend, complete tasks, and interact with others in

public or in a work setting appears to be limited. (AR 535). The ALJ then explained that

Dr. Brown's opinion was not persuasive because

> all examinations were normal, except for the psychological consultative examinations. At most examinations, memory was normal, and she followed instructions normally. Intellect was deemed normal and thus, she is mildly limited in the area of understanding, remembering, and applying information. While she has issues with anxiety and does not like to be in public around people. Many examinations she felt okay, or her anxiety was moderate. She leaves the house, drives, and shops. She is cooperative and gets along with her treatment providers and thus, she is not as limited as opined. Therefore, she is moderately limited in the area of interacting with others. Next, all examinations except for her psychological consultative examination showed her attention and concentration were mostly normal, except for her subjective statements. Even when she would report she had difficulty with her concentration, mental examinations showed the opposite that her attention was normal and thus, she is not as limited as she claims. **She enjoys crocheting, playing games, sewing, and making jewelry, all of which requires a considerable amount of concentration, persistence, and maintaining pace to complete these tasks, and thus she is not as limited [as] opined and thus, she is moderately limited in concentration, persistence, and maintaining pace.**
>
> Last, she admits she can manage her funds and is able to perform basic math and serial seven calculations and thus, this limitation is not warranted as well. Further, hygiene has always been kept, she is able to maintain her activities of daily living and there is no evidence of any mood outburst and thus, she is mildly limited in the area of adapting and managing herself.
>
> Last, examination findings at Dr. Brown's examination completely contradicts her treating mental health examination where other examinations were mostly normal. Therefore, taking the longitudinal record that contains numerous mental examinations, the undersigned founds Dr. Browne's findings to be unpersuasive, as the claimant may have embellished her symptoms in an attempt to obtain disability benefits.

(AR 535) (emphasis added). Thus, the ALJ stated that because Ms. S "enjoys crocheting, playing games, sewing, and making jewelry" Dr. Brown's opinion that Ms. S was limited in her ability to attend and complete tasks was not consistent with the other evidence in the record. (AR 535). The ALJ further explained that "crocheting, playing games, sewing, and making jewelry, all of which requires a considerable amount of concentration, persistence, and maintaining pace to complete these tasks" shows that Ms. S was not as limited as Dr. Brown opined. (AR 535).

The ALJ also acknowledged Dr. Lace's findings, deeming Dr. Lace's opinion to be "generally persuasive" because

> numerous mental examinations were normal showing she was able to follow directions and had a normal memory. She followed her treatment instructions and **enjoyed crocheting, sewing, making jewelry, and playing games. All of these hobbies require her to be able to remember how to do these tasks, follow directions apply the directions to complete these tasks and thus, warrant a finding she is only mildly limited in the area of understanding, remembering, and applying information.**

(AR 535-36)(emphasis added). Thus, the ALJ found that Ms. S's enjoyment of these activities was consistent with Dr. Lace's finding of minimal limitations in these areas.

Ms. S now disputes the ALJ's consideration of her daily activities when evaluating the medical opinion evidence, contending that ALJ's evaluation lacked the requisite logical bridge and was based on speculation. Indeed, the ALJ's analysis fails to mention Ms. S's statements about her ability to do these activities, which are repeatedly documented in the record.

In a Function Report completed by Ms. S on March 1, 2021, Ms. S lists her hobbies to include playing games with her boys, watching Scooby Doo on TV,

crocheting, playing with clay, sewing, and making jewelry. (AR 206; AR 209). But Ms. S answered the next question on the Function Report—"How often and how well do you do these things?"—as follows: "When I'm feeling good I play games with boys. I try to crochet to calm myself down it helps. Clay – rarely. Jewelry rarely. Sewing rarely." (AR 206). Likewise, in response to the next question—"Describe any changes in these activities since the illnesses, injuries, or conditions, began."—Ms. S wrote that "I use to be able to make clothes and accessories but now I start and just cry I have to stop and do something else. It was a passion and now I just can't.  Crocheting helps but I hyperfix on it and can be consumed at counting. I can no longer focus enough match colors with jewelry." (*Id.*). Ms. S completed a subsequent Function Report on July 24, 2021. (AR 251). There, Ms. S again listed her hobbies to include sewing, playing games with her boys, crochet, and jewelry. (AR 248). In response to the following question— "How often and how well do you do these things?"—Ms. S wrote "I can[']t sew anymore it makes me cry – no good. Crochet none. Jewelery (sic) rare." (*Id.*)

Finally, Ms. S discussed these activities during her hearing with the ALJ on January 11, 2022:

```
     Q   All right.  Do you have anything that you do as a hobby
 or special interest around that time -- around the house?  You
 mentioned watching Scooby-Doo, but do you do puzzles?  Do you
 get on the Internet?  Do you read or you know, attempt to read?
 Do play cards?  Do you do anything to pass time?

     A   I like to try to sew and crochet, but I can't really get
```

```
started because I just start crying doing the thing and I don't
know why.  I can't do it.  I lay --
        Q  You're unable to -- you're able to complete it?
        A  I forget what I'm doing, like the measurements.
        Q  Okay.
        A  And then I can't remember where I was, and it doesn't
look right.  There's nothing -- nothing is right with it.  At
least clay, I can squish it and I can make a mushroom.
```

(AR 77-78). Ms. S did not discuss these hobbies at her subsequent hearing on September 10, 2024. Rather, at this later hearing, Ms. S mentioned that she recently became interested in jigsaw and 3D puzzles but noted that she "take[s] a long time to finish." (AR 572). Ms. S also told the ALJ that she "sometimes can't sit still." (AR 573).

Despite her repeated statements of limitations in the record, the ALJ's decision implies that Ms. S regularly engaged in her hobbies without difficulty—even finding, without explanation, that her ability to do activities like sewing and crochet "require[d] a considerable amount of concentration, persistence, and maintaining pace" and that her hobbies also "require her to be able to remember how to do these tasks, follow directions to complete these tasks[.]" (AR 535-536). The ALJ makes these conclusions without any explanation—notably, without addressing Ms. S's reports that she rarely engage in these activities anymore because of her alleged limitations with memory, concentration, and persistence.

Thus, the ALJ's treatment of Ms. S's daily activities appears to construe Ms. S's answer to "What are your hobbies and interests" as an admission that she regularly engaged in mentally challenging activities. Indeed, the ALJ explicitly states that Ms. S "admits she enjoys crocheting, sewing, making jewelry, and playing games." (AR 537). The ALJ then relied on this conflated view of the evidence when assessing the medical opinions in the record—first, to find that Dr. Brown's opined limitations were unpersuasive in part because it was inconsistent with these activities, and then to find Dr. Lace's opinion generally persuasive because it was consistent with the ALJ's view that Ms. S regularly engaged in these activities. Given the ALJ's repeated reliance on mischaracterized evidence when assessing the medical opinions in the record, the Court cannot find that the ALJ adequately "consider[ed] the regulatory factors and built] a 'logical bridge' from the evidence to [her] conclusion" about the persuasiveness of the medical opinions. *Taylor,* 2:22-cv-32-PPS-JPK, 2023 WL 334601, at *3. Indeed, the Court can only find that the ALJ's reliance on this mischaracterization of Ms. S's hobbies when assessing the medical opinions amounted to impermissible cherry-picking. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014).

### 2.      Paragraph B Criteria in the RFC Assessment

The ALJ also discussed Ms. S's hobbies when addressing the Paragraph B criteria in the RFC Assessment. In the functional area of "understanding, remembering, or apply information" the ALJ found that Ms. S has mild limitations in part because Ms. S "admit[ted] she enjoys crocheting, sewing, making jewelry, and playing games, which

would require her to be able to remember how to do these tasks and follow and understand instructions, as well as apply these instructions to do these hobbies." (AR 537). Likewise, in the functional area of concentration, persistence, and pace, the ALJ found that she has moderate limitations, discounting Ms. S's allegations that she has trouble focusing because "she enjoys sewing, crocheting, and making jewelry, all of which require her to maintain concentration for periods of time and must persist and maintain the pace to finish the projects." (AR 537). In this assessment, the ALJ again failed to acknowledge the limitations Ms. S alleged with her activities or misconstrued her responses as an admission that she regularly engaged in these activities. Thus, the Court cannot find that the ALJ's RFC assessment is supported by substantial evidence, and remand is required. *See Susan Marie R. v. Kijakazi*, No. 20 C 2565, 2023 WL 1992182, at *5 (N.D. Ill. Feb. 14, 2023)(remanding where ALJ relied on activities of daily living but failed to acknowledge the claimant's limitations)(citing *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020)).

In response, the Commissioner contends that the ALJ did not equate Ms. S's ability to crochet, sew, or make jewelry with the ability to perform full-time work and that the ALJ properly "contrasted [Ms. S's] reports of an inability to concentrate with records indicating that she performed activities that, as the ALJ again noted, required concentration, persistence, and pace to complete the tasks." [DE 14 at 8]. Like the ALJ, the Commissioner fails to address Ms. S's reported difficulties and limitations with these activities. Thus, the Commissioner also relies on a cherry-picked or misconstrued view of Ms. S's abilities and hobbies.

**D.    Ms. S's Other Arguments**

As stated, Ms. S also alleges that the ALJ failed to properly consider Ms. S's participation in treatment, the types of treatment she received, and impermissibly dismissed third-party statements in the record. [DE 12 at 4]. The Court declines to address these other arguments based on the issues identified with the ALJ's treatment of Ms. S daily activities when evaluating the persuasiveness of the medical opinion evidence. The ALJ will have the opportunity to fully discuss and reevaluate Ms. S's other allegations on remand.

**IV.    CONCLUSION**

For these reasons, the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this opinion.

**SO ORDERED** this 9th day of March 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge